Good morning, Your Honors. My name is James Todd Bennett, and I represent Respondent – excuse me, the Petitioner, rather, Rafael Mendez-Torres. And I'd like to reserve two minutes of my time. All right. I'll give you the two-minute warning, then. Thank you. Two issues before the Court in this habeas corpus proceeding, which is de novo, under the applicable standard of review. And those two issues are the issues Let me make a comment. This is a beautiful courtroom, but the acoustics are terrible. So speak right up, would you please? Yes, sir. I apologize. Particularly when you've got a bum ear, and only one. I share in the same problem, Your Honor. Hence my machine here. Yes. The two issues in front of the Court would be the issue, first, of equitable tolling, and secondly, the due process violation based on ineffective assistance at counsel. They're independent of one another. There are two forms – there are two forms which sound under the habeas corpus claim. The district court – Just a minute. When you say they're independent, you mean equitable tolling is not required to get to the ineffective assistance claim? I believe you can – the – under the 2241A grounds for habeas, if you have a constitutional violation and there is a – and it's sustained, then you would get to the issue of what kind of remedy would you shape under those circumstances. And it would be akin to the same relief, remand to the board and let him have his hearing on his asylum claim. But to have the equitable tolling, you have to show fraud, correct? Correct. All right. And so when you talk about the ineffective assistance of counsel, you're going to be talking about that as it would have to rise to the level of fraud, correct? It would be a separate issue. The facts of this case are rather unique, because instead of the usual pattern where you have of either a notario posing as an attorney under the of which a lot of the ineffective assistance of counsel's cases go, you have two separate people involved. You have Stevens and Unger or – Exactly. And there is no – there is no collusion between the two. They're two independent actors. The problem with this case, that makes it somewhat unique. Now, when the district court addressed these issues, it essentially treated it as simply as an equitable tolling issue, did not address the ineffective assistance of counsel. Well, the – let me get this clear now. The equitable tolling claim goes to relief against the actions of the non-attorney? Is that what it amounts to? True. But it – but at the same time, it also resonates in – and this is where it dovetails into an ineffective assistance of counsel claim in Stevens's – excuse me, the attorney's subsequent handling of the case in front of the immigration judge, where he essentially says, well, whatever Stevens did here, we're presenting that as the grounds for this case. Make a decision, judge. We're withdrawing all applications. And we're going to go up on appeal with the BIA. He's quite specific about it. We're going up on this same issue that was essentially concocted by Stevens in this fraudulent use of an asylum application to commence. Well, would you say it was completely concocted by Stevens and that it seems that your client, your client basically said, you know, hey, I want – I want to get in the court and, you know, whatever you have to do to get me in the court, and then he just left that to the attorney to, you know, do whatever he had to do to get him in the court? So does your client have complete clean hands there? I believe so, Your Honor. What he does is he – this is the – one of the other problems in this case is the district court treated this as though it's sort of a market relationship. It's sort of an Adam Smith analysis of something that was actually a fiduciary relationship. He goes to Stevens for his legal expertise. Stevens is holding himself out as a legal representative. Now, whether he's accredited by the Board of Immigration – excuse me – by the Executive Office of Immigration Review or not, that's not in the record and we don't know. But he's holding himself out as such. So he goes in and he gets this legal advice. The legal advice is, well, you want to apply for something that's described as a suspension. Well, I'll take care of it. Sign some papers and here we go. Then, without disclosing, he files the asylum application. He's never put on notice that this is how he's going to go about it. He's never put on notice that he's going into court. All he knows is he's asking, I've heard about this form of relief. Can I get it? Stevens says, no problem. Give me some money. Can I ask you – can I ask you which claim you're arguing now? We're starting with the equitable – trying to argue the equitable tolling at this point. So, as far as my client in the fiduciary relationship with Stevens is not in this arm's length bargaining that the court portrayed it as down below at the district court level. Well, if you're arguing the equitable tolling claim, then what's the conduct that gives rise to equitable tolling? I'm sorry? I said, what conduct justifies equitable tolling? Well, as to Stevens – As Judge Callahan said, it has to be fraudulent, right? Yes. The first – we get the – after the consultation, the first thing that arises – the fraud cases, essentially, the two leading cases, have a notario that's posing as an attorney. However, I think in the – in Lopez, there's – Well, this one here, he imposes an attorney. Correct. Absolutely correct. Or you have – I think you have cases, too, where the attorney lies to the client about – the client says, well, what's happening with my appeal or whatever, and the client – the attorney says, don't worry about it, it's all handled, and then the client finds out much later that they never did anything or, you know, things along those lines. I mean, where the attorney actually lies to the client when the client makes inquiry. I think that's implicit in Lopez in this relationship when we're looking at the equitable tolling side of the issue with Stevens. We've got – essentially, he's saying, okay, I'm going to file for suspension. Instead, he files an asylum application, commences the proceeding, doesn't tell him he's going to an asylum hearing. He goes to this administrative hearing, and all of a sudden, it's announced that he's in an asylum hearing, and he's out of there with not a denial, but a referral. Well, let me see if I can get something in my mind. Suppose there is equitable tolling. Now, what kind of remedy would your client get so that he can stay in this country? Can you explain that to me? What he – what Mr. Torres is seeking is a remand back to the Board of Immigration Appeals so he can hear his actual asylum claim, which was never presented. Well, yeah, but he – in order to have a claim – Well, he's gone right now anyway, right? He's been removed, but the court still has jurisdiction over him. I know, but he's in Mexico right now, right? That's correct. Okay. So really, the only possible remedy that I see that you could have would be that he should be restored so that we say he voluntarily departed rather than was transported at government expense. Isn't that about the only thing you could ever get if you were successful all the way through? No. I think he needs to have a hearing on his – Well, answer the question. Suppose he has a hearing. You get everything that you're entitled to. Are you – could your client ever be entitled to anything more than that? If the asylum claim were denied, he'd be entitled to an alternative voluntary departure. Yes. Yes. But you're pressing the asylum claim. But he's lost that in the ineffective assistance counsel end of the case because Stevens withdrew that application. He never pursued it. In fact, when the asylum application's withdrawn, there's no translator in the court. My client's never had an opportunity to speak up on that issue. Then at the voluntary departure hearing, after saying that in August we're going to file this, according to the attorney, they turn around and he withdraws it. He's lost that right. So all of a sudden you want to hold another hearing, maybe all of us come up to the Ninth Circuit again, and you concede probably the only remedy he ever could get would be a voluntary departure, and he's already there in Mexico. Well, if he gets – what he's losing is his right to a hearing. He's losing his right to a fair hearing on his application claim. If he wins, he's allowed to stay as a matter of right. Well, he's not here, and if he wins, he can't establish ten years of residence anyway. That's not the issue on the asylum claim. Ten years residency is not an issue on the asylum. He's not even pursuing a suspension claim. That's for the cancellation claim or the withholding. But let me get back. You never answered this basic question. I know you're looking at your time, but if the panel still has questions, I'll still allow your two minutes rebuttal. What's the fraud that justifies tolling? The fraud? Yeah. The fraud is the substitution of applications, putting him in proceedings without advisement, not giving him any legal advice. Substituting what for what? The other problem is this. Well, just remember, what's a fraud? Substituting what for what? The overriding fraud in this case is when he goes in and talks to Stevens. This statute that he's talking about, the suspension statute, has already been repealed on September 30th. There is no right to suspension, and that's going to all disappear by 1930. But why isn't that just incompetence or ineffective assistance? Why is that fraud? Why is that fraud? That's right. If Stevens is holding himself out as being a legal representative knowledgeable in the law, he should at least be able to advise this person, my client rather, of the status of the law. By not disclosing it and saying, oh, we'll give it a shot, here we go, that is fraud. He's misrepresenting. It's not any different than a lawyer misadvising the client about the statute of limitations. The lawyer should know, but doesn't know doesn't mean it's done with an evil intent. Just negligence, right? Isn't that the case here? I mean, there's no showing of any, you know, intention to mislead the client. Well, in the alternative, it would be a willful and wanton omission. Well, I think what Judge Tashima is getting at, too, is are you asking us to go on this slippery slope that where when lawyers are incompetent or they're ineffective or anything along those lines, then is that always going to be fraud? They have to be two different things. I mean, not all ineffectiveness or incompetence can be fraud. And if the fact that he took the wrong avenue on the law, then this would not be the only immigration lawyer that ever has or will make a mistake. So if we hold what you want to hold, then every time are we creating an avenue so that every time someone can show that their client was ineffective or made a mistake or something along those lines, then they have a claim for fraud and, therefore, equitable tolling. Well, in this case, it's not a lawyer. It's a person holding himself out as being competent in the law. That in and of itself, I think, distinguishes. You think that strengthens your argument? I mean, since I'm not sure that, I mean, still in this particular area, we have a lot of people that aren't lawyers that are involved. And so whether it's the notarios or the legal representatives or anything along those lines, then every time that there's a mistake made, that it's going to derail the whole immigration process. I think that's unless my colleagues have other questions, I'll allow the government to, and since we have, I mean, we obviously have a lot of questions on this issue, I'll allow you a brief two minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honor. I'm Monica Fernandez. I'm an assistant United States attorney in the Northern District of California, and I represent the respondents in this matter. Well, I think you've probably, you know, you see where we're focused at this point. Certainly. So we're obviously familiar with the facts, so I think you can probably best spend your time addressing why you don't think that there's any fraud or I think I sort of started out with, if we give appellant what he wants, is this a slippery slope that in every immigration case we have this potential? Certainly. To address first the claim of equitable tolling, in this case the petitioner, rather than going to the BIA and filing a motion to reopen claiming ineffective assistance of counsel, he filed this habeas petition in district court. And what the district court judge did in this case was analyze this petition very narrowly and look at the relief the petitioner was seeking. And what he was seeking was basically he wanted an opportunity to go to the BIA and file a motion to reopen so that he could file a new asylum application, raising his alleged claims that he has a fear of returning to Mexico. And he says that he was prohibited from doing that because his attorney, Mr. Donald Unger, did not notify him of the BIA's decision within the time period, which is 90 days, to permit him to do that. And so the court looked at. Let me see if I understand. What he really wants is an opportunity to file a new asylum petition? Yes. What happened in this case, and I think the timeline is rather telling, this petitioner. I'm familiar with the facts. I know about Stevens and Unger. But I'm trying to find out where he wants to go or where he could go now. My understanding of the case is that what he wants now from this court is an opportunity to go to the BIA and file a motion to reopen that would not be time barred. Right now it would be time barred because more than 90 days elapsed from the time the BIA issued its decision,  Now, don't you think the fact that he didn't know about the decision is enough to toll the time to reopen? In other words, I think the district court was mistaken in saying, well, he had the obligation to find out, even though he was represented by counsel, right? Right. It's not his fault. I don't think the district court was correct in that conclusion. I think what the district court did, Your Honor, was to look at any alternative and assuming that there was fraud, that there was no due diligence on the part of Mr. Torres. But the court initially concluded that there was no fraud, even if Mr. Unger failed to notify his client of the BIA's decision. And it's important to look at the case in the context as it existed at that time. In 2002, the BIA issued its decision. Prior to that date, there's nothing in the record that shows that Mr. Torres ever told anybody he had a genuine fear of returning to Mexico. Well, he was interviewed by an asylum officer, correct? He was interviewed by an asylum officer. And the notice, there's a form letter that the asylum officer issues when it refers the asylum application to an immigration judge. The application as it existed at that time raised this boilerplate economic hardship argument that Stevens concocted in order to get Mr. Torres before an immigration judge. At that time, the record is devoid of anything that reveals what their conversation was. But certainly at that time, Mr. Torres could have said to the asylum officer, wait a minute, that's not my asylum claim. I genuinely fear returning to Mexico. And he never said that when he was talking. That was never said at that time, correct? It's unclear, but the record doesn't show that it was said or wasn't said. But it's clear that he had an opportunity at that time to raise that claim. And he could have asked for an opportunity to amend his asylum application, and he didn't do so. He being the lawyer? He being. At that point, Mr. Torres was before the asylum officer, and he wasn't represented by a lawyer. He was represented, I believe, still by Stevens. I mean, Stevens had filed the application for him. But it's clear that there were several opportunities along sort of the continuum of this case where he could have raised his voice and said, wait a minute, my cousins were killed in 1996 in Mexico, and I do have a fear of returning there. But he never did that. And so this case was a suspension case from the get-go. He went in to Stevens and said, I want to apply for suspension of deportation, because at that point he did have seven years of unlawful presence in the United States. And so there was nothing to trigger an interview on an asylum claim. This is a Mexican national who wanted to apply for suspension. So there was no reason for Stevens to conduct a thorough interview, as Mr. Bennett is contending he should have. So the only reason to make the asylum claim was to get him before the, you know, get him a hearing, right? Right. There's no vehicle for just applying for suspension affirmatively. You have to be in deportation proceedings. And under the current state of the law, you have to be in removal proceedings. Are you sort of saying that that puts a little bit of a bad light on Mr. Torres's claim that he has a valid asylum claim? I wouldn't go so far as to say it puts it in a bad light, but I think that he's now placing the burden on every other person in this case, and there's nothing in the record that ever says that he – if he had said, I told Stevens I had a fear of returning to Mexico, my two cousins were killed, I want to apply for asylum, then I think we would have a different story, but that's not what happened here. And, again, when he went to Mr. Unger to represent him in his immigration court proceedings, he did not pursue the asylum claim. He wanted to pursue the suspension claim. And the fact that, you know, in the intervening period, obviously, the state of the law changed such that he was no longer eligible for suspension. But the tactical decision that he made in actively seeking to put himself in proceedings by going to Stevens and saying I want to apply for suspension, the fact that it didn't have the outcome that he expected doesn't amount to fraud or ineffective assistance of counsel. What do you understand the conduct that the petitioner is relying on to toll the statute on the motion to reopen? Well, I think Mr. Bennett's argument is that the conduct of Stevens is relevant, but I believe that the only – and his argument is that there's a continuum of bad conduct, but the only action that occurred that would have affected the 90-day limit to file a motion to reopen was the failure to notify Mr. Torres of the BIA's decision. That the decision had issued. And that was Unger who should have done that. Is that right? Pardon me, Your Honor, I didn't hear you. That was Unger that should have notified him. That was Unger who should have done that, right? Yes, it was Mr. Unger. And, again, the record is devoid on another important fact in this case. Mr. Torres, when he sought representation by Mr. Bennett here, he filed a complaint with the State Bar of California regarding Mr. Unger's representation. And in that letter to the State Bar, he raised only two claims. And those two claims were that Mr. Unger withdrew his asylum application without his consent and that Mr. Unger failed to seek voluntary departure on his behalf. Mr. Torres did not tell the State Bar that he was not notified of the BIA's decision. That's not part of the record. It is part of the record, Your Honor. What you're saying, though, is that the failure to notify by Unger, if that's a cause for not filing a timely motion to reopen, was not a fraudulent act. I mean, the record doesn't show it was fraudulent. No, I believe the record, it may be negligence, but I don't believe it's fraud. And, again, it's an issue that Mr. Unger was not given an opportunity to address because ---- It was not raised in the letter to the State Bar. Correct, Your Honor. And Mr. Unger responded at length. He filed a four-page, single-spaced letter responding to the State Bar's complaint within days of their request that he do so. And he was ---- So it's unclear. I mean, it may be that Mr. Torres was not notified of the BIA's decision, but Mr. Unger was not given an opportunity to address that claim. And so that ---- So you're saying Stephen's conduct, albeit, you know, whatever, albeit whether the court wants to be critical or not, is irrelevant, that what ---- that really what we have to focus on is the failure to notify him after the ---- of his time to appeal, right? Correct. And that the failure to notify was ---- the issue was the claim for suspension, not asylum, suspension of deportation, not asylum.  That's right, Your Honor. And there's no ---- this is a habeas case. There's absolutely no showing of grounds that he could succeed even if he had appealed. I can see where he's getting ---- Isn't that right? That's correct. And so even if Mr. Unger's conduct was ---- I see that I'm running out of time, but I'll continue to answer the panel's questions. No, you can answer questions. Okay. Even if it was negligence, at that point, Mr. Unger's understanding of his client's case was he had filed an appeal to the BIA despite the change in the law to try to make an argument for him on ---- that he should be permitted to proceed under the old rules, which were that he had to have seven years rather than ten years of presence in the United States. And that argument, that appeal, whether it was meritorious or not, it arguably was not meritorious to take that appeal, but it ---- Mr. Torres remained in the United States for another three years while that appeal was pending. And by 2002, the state of the law was pretty clear that you had to have ten years of unlawful presence and that the time to accrue that ten years stopped running as soon as the charging document was issued. So there would have been absolutely no basis for an appeal from the BIA's decision in this case to the Ninth Circuit, or rather a petition for review. It would have been a meritless appeal. And at that point, there was nothing in the record which would have suggested that a motion to reopen would have any validity either. There was nothing in the record about this purported asylum claim until the day before the habeas petition was filed. Thank you. Thank you very much. Just briefly in rebuttal, Your Honors. First place. I'd like to focus back on the second issue in the case, the ineffective assistance of counsel issue. The loss of the failure to notify is highly significant. On its face, that's incompetence. I don't see how you could say that an attorney who's been retained to represent him. But how is it fraud? It's not fraud. Ineffective assistance to counsel doesn't require a showing of fraud. It requires a showing that the performance of the attorney was so inadequate so as to prejudice. Wait a minute. Your argument is that if the failure to file a timely motion to reopen is due to ineffective assistance, then no fraud is required? Is that your argument? I do not believe so, Your Honor. Well, you just said that that wasn't fraud. It could be two things. Under the tolling analysis, the equitable tolling analysis, you have to show fraud. Under the ineffective assistance of counsel, the standard is different. The standard is you've got to show that the performance of the attorney was so inadequate so as he was unfairly precluded under the Fifth Amendment from presenting his claim. So there's two different standards, and there's two different issues. As to the ineffective assistance of counsel issue, on its face, the failure to tell the client, look, your view on it. What I'm trying to get at is this. Do you have to win on both issues in order to get relief? I don't believe so. I think they're alternative. Under the, I think, null holding of Lopez, there's a bipartisan. Well, then I'll ask my question again, then. Is it your argument that you don't need to invoke any kind of tolling in order to get relief under the ineffective assistance argument? I don't think you do, Your Honor. I think they're two separate forms of habeas. Is there a case you can cite to us that you rely on for that proposition? I believe Lopez makes that distinction. It first goes to an equitable tolling analysis, and then it goes through an ineffective assistance of counsel. Finds equitable tolling based upon, well, it says fraud is necessary for equitable tolling.  I think the established lines of cases cited in the brief, appellant's brief, clearly establish that there's a different standard for ineffective assistance of counsel historically in this circuit. All right. Thank you for your argument. All right. The Court is just going to take a short recess, and then we'll be back on the next matter. Thank you. All rise. This Court stands to recess for five minutes. Five minutes. Five minutes. Five minutes. Five minutes. Five minutes. Five minutes. Five minutes. All rise.
judges: Bright , Tashima, Callahan